FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 28, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BRIAN H.,[1]

                    Plaintiff,

         v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Defendant.

No.    1:22-CV-3206-EFS

**ORDER REVERSING IN PART THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

        Due to schizoaffective disorder, bipolar disorder, post-traumatic stress disorder (PTSD), personality disorder, and opioid use disorder, Plaintiff Brian H. claims he is unable to work fulltime and applied for supplemental security income benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of the examining

_____

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

medical source, Thomas Genthe, PhD, and the state agency advisor, Jan Lewis, PhD, and the ALJ improperly assessed Plaintiff's credibility.  As is explained below, the ALJ erred. This matter is remanded for further proceedings for consideration of the period prior to April 21, 2021.

## I.    Background

In April 2019, Plaintiff filed an application for benefits under Title 16, claiming disability beginning January 2015, based on the physical and mental impairments noted above.[2] At his hearing, Plaintiff amended his onset date to the date of application.[3]

After the agency denied Plaintiff benefits, ALJ Timothy Christensen held a telephone hearing in October 2021, at which Plaintiff appeared with his representative.[4]  Plaintiff and a vocational expert testified.[5]

---

[2] AR 206.

[3] AR 71.

[4] AR 66-92.

[5] *Id.*

After the hearing, the ALJ issued a decision denying benefits.[6] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[7] As to medical opinions, the ALJ found:

- The opinion of examining medical expert Thomas Genthe, PhD to be not persuasive.

  The opinion of state agency evaluator Jan Lewis, PhD, made at the initial level of review to be persuasive.

The ALJ did not address the opinion of state agency evaluator, Dan Donahue, PhD, at the reconsideration level of review, which was that the file lacked sufficient evidence to make a determination.[8]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since April 29, 2019, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: schizoaffective disorder, bipolar disorder, PTSD, personality disorder, and opioid use disorder.

---

[6] AR 12-28.  Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[7] AR 34-36.

[8] AR 1009.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

  Understanding, remembering, and carrying out simple, routine type tasks; no fast paced work or production quotas; occasional contact with others (coworkers, supervisors, and the public), and no exposure to hazards such as dangerous machinery and unprotected heights.

- Step four: Plaintiff is able to perform any of his past relevant work as a laundry sorter.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could also perform work that existed in significant numbers in the national economy, such as an industrial cleaner and a night cleaner.[9]

Plaintiff appealed to the Appeals Council.[10] In February 2021, the Appeals Council denied Plaintiff's appeal.[11] Plaintiff timely requested review of the ALJ's decision by this Court.

---

[9] AR 15-23.

[10] AR 202.

[11] AR 1-6.

DISPOSITIVE ORDER - 4

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[12] and such error impacted the nondisability determination.[13] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

## III.    Analysis

Plaintiff seeks relief from the denial of disability on two grounds. He argues the ALJ erred when evaluating the medical opinions and when evaluating

---

[12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. ¸ 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Plaintiff's subjective complaints.  The Commissioner argues that the ALJ properly evaluated both the medical opinions and Plaintiff's subjective complaints.  The Court disagrees in part with the Commissioner. As is explained below, the ALJ's analysis contains consequential error.

**A.    Medical Opinion: Plaintiff establishes consequential error**

Plaintiff argues the ALJ erred in his evaluation of the medical opinions.[15] Specifically, Plaintiff argues that the ALJ erred in making conclusory findings which failed to address either the supportability factor or the consistency factor when evaluating the opinions of examining source Dr. Genthe and in reasoning that the opinions of Dr. Lewis were persuasive for erroneous reasons without considering the consistency of the opinions with the record as a whole.[16]  The Commissioner argues there was no error because the ALJ properly evaluated the opinion evidence and that throughout the decision the ALJ cited to instances in the record which supported his analysis.[17] In his reply, Plaintiff argues that the

---

[15] An ALJ must consider and articulate how persuasive he found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[16] ECF No. 10, pgs. 18-22.

[17] ECF No. 16, pgs. 10-14.

Commissioner's arguments amount to post hoc rationalization for the ALJ's conclusory findings.[18]

1. <u>Standard</u>

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[19] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[20] Supportability and consistency are the most important factors,[21] and the ALJ must explain how he considered the supportability and consistency factors when reviewing the medical opinions and support his explanation with substantial evidence.[22] When considering the ALJ's

---

[18] EDF No. 17, pgs. 9-12.

[19] 20 C.F.R. § 416.920c(a), (b).

[20] *Id.* § 416.920c(c)(1)–(5).

[21] *Id.* § 416.920c(b)(2).

[22] *Id.* § (c); 416.920c(b)(2), (c)(1)–(5); *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022) ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[23]

2.  Plaintiff's Testimony

On October 25, 2021, Plaintiff appeared with his attorney before ALJ Christensen.[24] At the hearing, Plaintiff's attorney amended the alleged onset date to April 29, 2019, the date of his application.[25]  Plaintiff testified that he was 33 years old and had gotten a GED.[26]  Plaintiff testified that his only job was in 2016 and 2017 in a hospital laundry where he was on his feet and lifted up to 150 pounds, although not on his own, and up to 50 pounds on his own.[27]  He said that he was fired because he thought that the boss and coworkers were talking about him.[28] He said that he then performed a variety of jobs for Union Gospel Mission.[29]

---

[23] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[24] AR 66-92.

[25] AR 71.

[26] AR 72.

[27] AR 72-73.

[28] AR 73-74.

[29] AR 74.

He said that he worked as a security guard and as a kitchen helper, washing dishes and preparing food.[30]

Plaintiff testified that he was homeless because his apartment was condemned.[31]  He said that the State of Washington had found him disabled and paid him disability benefits, including rental assistance. [32]  He said he has problems dealing with others and has conflict with friends and strangers.[33] Plaintiff said he had lost other jobs because he got paranoid that others were talking about him.[34] Plaintiff said his paranoia was worse when he was on methamphetamines but that his paranoia continued with sobriety.[35] Plaintiff said he has depression more often the mania.[36]  He said that he sees a psychologist for pills but would like to get back to therapy.[37]  Plaintiff said he could not hold a job

---

[30] AR 75.

[31] AR 76.

[32] AR 76-77.

[33] AR 77.

[34] AR 77-78.

[35] AR 79.

[36] *Id*.

[37] AR 80.

DISPOSITIVE ORDER - 9

because he cannot deal with stress or be around people.[38] He said that his wife of two years does all the household chores because he forgets to complete them.[39]

Plaintiff testified that he had not seen Dr. Genthe after the one-time consultative examination, but did engage in treatment with Comprehensive Healthcare.[40]  He said that he did not remember saying that he had no depression, anxiety, or hallucinations but did tell them he had no problems taking his medication and that he continued working on his coping skills.[41]  Plaintiff said he had his drug testing done at Yakima Neighborhood Services and also received his addiction medication there.[42]  Plaintiff stopped treatment when he felt that it was not necessary.[43]  Plaintiff said he was not seeking work and had not sought work since 2017.[44]

---

[38] AR 81.

[39] *Id.*

[40] AR 82.

[41] AR 83.

[42] AR 83-84.

[43] AR 84.

[44] AR 85.

3.    <u>Relevant Medical Records</u>

The record contains medical records regarding both Plaintiff's drug treatment and mental health treatment during the relevant period.

a.    <u>*Department of Corrections*</u>

On May 18, 2018, Plaintiff was assessed for placement in restricted housing by Jack Luadzers, PhD.[45] During the interview, Plaintiff reported command auditory hallucinations that began in childhood and continued during sobriety.[46] On examination, Plaintiff was well-groomed and oriented, fidgety and agitated, suspicious and evasive, had irritable affect, anxious and depressed mood, soft and pressured speech, normal thought content and thought process and intact memory and attention.[47] Plaintiff reported weight gain and low energy, and a suicide attempt at age 15.[48]  Plaintiff reported that Haldol was effective in managing auditory hallucinations.[49]  Dr. Luadzers noted a diagnosis of schizoaffective disorder, depressive type and post-traumatic stress disorder and opined that Plaintiff had a moderate level of insight, a high level of criminal attitude, and a

---

[45] AR 349-354.

[46] AR 349.

[47] AR 349-350.

[48] AR 350-351.

[49] AR 351.

high impulsivity.[50] Dr. Luadzers opined that Plaintiff had a Global Assessment of Functioning (GAF) of 55, indicating a moderate level of impairment.[51]

On June 6, 2018, Plaintiff presented to Jack Luadzers, PhD, and reported command auditory hallucinations and feelings of paranoia and requested that he be placed back on Haldol.[52] On examination, affect and mood were normal, thought process was organized, speech was soft and low, and thought content was normal.[53]

On August 2, 2018, Plaintiff met with Dr. Luadzers for case management when he complained that he was hearing voices because he was not receiving Haldol as he should be, and Dr. Luadzers noted that his case had been overlooked.[54] On examination, Plaintiff's affect was angry, mood was anxious, attention and memory were normal, auditory hallucinations were reported but he did not appear to be reacting to outside stimuli, thought content was normal, and behavior was hostile and aggressive.[55]

---

[50] AR 353.

[51] *Id.*

[52] AR 348.

[53] *Id.*

[54] AR 347.

[55] *Id.*

1    On November 20, 2018, Plaintiff presented to Dr. Luadzers[56] for case

2    management and voiced complaints regarding not getting his medications but

3    stated that he would get them when discharged.[57]  Plaintiff's affect, speech,

4    thought content, memory, and attention were within normal limits but he was

5    abrupt and short and did not allow for intervention.[58]  Diagnosis was

6    schizoaffective disorder, depressive type and post-traumatic stress disorder.[59]

7    On December 6, 2018, Plaintiff saw Scott Light, PA-C on referral from his

8    psychiatrist noting a history of acute kidney failure and pulmonary damage from

9    vasculitis in 2017.[60]  Lab results indicated normal liver function.[61]

10    b.    *Thomas Genthe, PhD*

11    On April 23, 2019, at the request of the Department of Social and Health

12    Services (DSHS), Plaintiff was examined by Thomas Genthe, PhD.[62]  Plaintiff

13    reported that he had never been married but was dating, that he had been

14    incarcerated until a month prior and was in an inpatient substance abuse facility,

---

[56] It appears that Dr. Jack Luadzers' first name was changed to Jackie.

[57] AR 344.

[58] *Id.*

[59] *Id.*

[60] AR 341.

[61] *Id.*

[62] AR 355-364.

that he did not have a license, and that he has difficulty interacting with others due to distrust.[63] Plaintiff reported that he had been in treatment for one to two months, that he dropped out of school in the eighth grade but later got a GED, that he last worked two to three years prior, that he last used methamphetamines 30 days prior, and that he last used heroin five months prior.[64] Plaintiff reported to Dr. Genthe that he was able to care for his hygiene, prepare meals, perform household chores, manage his medications, and schedule his own appointments but that he could only shop for groceries when stores were not crowded.[65]  Plaintiff reported to Dr. Genthe that he had significant depression in the past but had not felt severe depression in some time.[66]Plaintiff reported symptoms of PTSD including distressing thoughts, distressing dreams, flashbacks, being easily startled, and being hypervigilant.[67] Plaintiff reported symptoms of ADHD including being easily distracted, being disorganized, impulsiveness, impatience, and being restless or fidgety.[68] Plaintiff reported symptoms of psychosis including auditory and visual hallucinations since he was a teen, as well as a paranoid

---

[63] AR 355.

[64] AR 356.

[65] *Id.*

[66] AR 357.

[67] *Id.*

[68] *Id.*

1  thinking but stated that his medications control his symptoms "pretty good."[69]

2  Dr. Genthe diagnosed Plaintiff with PTSD; ADHD; Schizophrenia; Personality

3  Disorder, with Borderline features; Heroin Use Disorder, in early remission; and

4  Stimulant Use Disorder, in early remission.[70]

5      Dr. Genthe performed a mental status examination and stated that Plaintiff

6  gave excessive detail to questions but was open and cooperative; that Plaintiff

7  appeared attentive; that Plaintiff described his mood as good but his affect was

8  anxious and he paced the entire time; that Plaintiff did not have paranoid or

9  delusional thinking but had anxious ruminations and was tangential; and that

10  Plaintiff was oriented and his perception and memory were within normal limits.[71]

11  Dr. Genthe found that Plaintiff's concentration was normal and that he could

12  understand abstract thought, but only had fair insight and poor social maturity.[72]

13  Dr. Genthe administered a Personality Assessment Inventory test and states that

14  the results of the test indicated a person with significant problems thinking and

15  concentrating, accompanied by hostility, resentment and suspiciousness, as well as

[69] *Id.*

[70] *Id.*

[71] AR 360.

[72] AR 361.

poor judgment.[73]  Dr. Genthe noted that Plaintiff's scores indicated a person with prominent features of Antisocial Personality Disorder.[74]

### c.     *Comprehensive Healthcare*

On February 19, 2019, Plaintiff met with Kathleen Hollard, ARNP at the Department of Corrections.[75] Plaintiff reported depression but his affect, speech, and thought content were normal; he reported trouble sleeping and auditory hallucinations; and he was oriented.[76]  Plaintiff was there to receive Suboxone and was not interested in psychiatric treatment.[77]  Plaintiff was not taking medications and was experiencing auditory hallucinations but denied that they were command.[78]

On February 26, 2019, Plaintiff presented to Todd Blair, LMHC, for reassessment and reported that he has heard voices all his life, could not be around

---

[73] AR 362.

[74] AR 362.

[75] AR 372.

[76] AR 374.

[77] *Id*.

[78] AR 376.

people, is paranoid, and has trouble sleeping.[79]  Plaintiff was accepted to the

program and referred for a dual treatment (MICA) program.[80]

On March 5, 2019, Plaintiff presented with normal speech and affect and

reported trouble sleeping and auditory hallucinations.[81]  On March 13, 2019,

Plaintiff presented to Kenneth Braconnier, MHC, and reported that he was having

trouble with paranoia and going to public places.[82] On examination, Mr.

Braconnier noted flat affect and depressed mood.[83]  On March 20, 2019, Plaintiff

presented to Winchester Dang, ARNP for evaluation. [84] He reported symptoms of

anxiety including crying, irritability, decreased libido, and decreased appetite.[85]

Plaintiff reported paranoia and hearing voices which were at most times

unintelligible but when able to be understood encouraged him to harm himself and

others.[86] Plaintiff reported improvement with Haldol and was started on Haldol.[87]

---

[79] AR 380.

[80] AR 394.

[81] AR 398.

[82] AR 405.

[83] *Id.*

[84] AR 411.

[85] *Id.*

[86] *Id.*

[87] *Id.*

On examination, his speech was impaired, his mood and affect were anxious, his concentration was poor with distractibility, he had thoughts of persecution, and he displayed paranoia. [88]

On April 3, 2019, Plaintiff presented to ARNP Dang and reported improvement with Haldol, stating that the voices were still present but now murmurs.[89] Plaintiff endorsed nightmares and jitteriness.[90] On examination, Plaintiff had normal speech, blunted and anxious affect, normal mood, poor concentration and attention span, distractibility, thoughts of hopelessness and helplessness, fair insight and judgment, and auditory and visual hallucinations.[91] ARNP Dang diagnosed schizoaffective disorder, bipolar type; posttraumatic stress disorder; stimulant abuse with stimulant-induced psychotic disorder with delusions; opioid dependence, uncomplicated; and other stimulant dependance, uncomplicated.[92] On April 10, 2019, Plaintiff began attending group therapy sessions.[93]  On April 12, 2019, Plaintiff reported to Counselor Braconnier and was

---

[88] AR 414-415.

[89] AR 429.

[90] *Id.*

[91] AR 431-32.

[92] AR 436-37.

[93] AR 438, 441, 443.

improved but fidgety and pacing during the session.[94] Counselor Braconnier noted that due to his "significant issue with mental health" Plaintiff would be seen weekly until he stabilized.[95] Results of Plaintiff's mental status examination were unchanged.[96] Plaintiff's mental status examination remained unchanged when he presented on April 23, 2019.[97]

On May 17, 2019, Plaintiff completed inpatient treatment with Pathways MICA program.[98] After meeting with Counselor James Tuttle, Plaintiff was placed into continued outpatient treatment with Pathways.[99] In June 2019, Plaintiff was noted to have maintained continued abstinence.[100] In July 2019, Plaintiff was incarcerated following substance use.[101] On August 13, 2019, Plaintiff contacted Comprehensive Healthcare requesting medication and was advised that he would need to be assessed.[102] On examination, Plaintiff had normal speech, anxious mood

---

[94] AR 446.

[95] AR 450.

[96] AR 452-53.

[97] AR 472-73.

[98] AR 487.

[99] AR 495.

[100] AR 509.

[101] AR 512.

[102] AR 518.

1  and affect, paranoid thought content, and auditory hallucinations, and was

2  oriented, with normal memory and fair insight and judgement.[103]

3      On September 6, 2019, Plaintiff presented to ARNP Holland for screening

4  for reentry to Pathways.[104] Plaintiff described his mood as "alright" and his affect

5  was normal, he reported nightmares, his speech was normal, his thought process

6  was normal, he was oriented, and he had no hallucinations.[105] Plaintiff was not

7  currently on medication but had taken Haldol.[106] Ms. Holland notes that Plaintiff

8  reported past diagnosis of schizophrenia and bipolar and wanted treatment and

9  medication but did not qualify for services.[107] On October 10, 2019, Plaintiff was

10  discharged due to failure to contact.[108] On October 29, 2019, Plaintiff presented

11  requesting medication.[109] Plaintiff was assessed on that date and on examination

12  was fidgety and restless; had normal speech, anxious mood and affect, and poor

---

[103] AR 522-23.

[104] AR 366.

[105] AR 367.

[106] AR 368.

[107] AR 369.

[108] AR 563.

[109] AR 564.

concentration and attention; was easily distracted and paranoid, had auditory

hallucinations; was oriented; and had fair judgment.[110]

On April 13, 2020, Plaintiff presented to Sandra French, ARNP for

medication refill.[111] On examination, he had normal speech, anxious mood, poor

attention and concentration, was distractible, was oriented and had auditory

hallucinations, fair insight and judgment, and intact memory.[112] At a session on

May 15, 2020, Plaintiff advised ARNP French that his depression was improved,

his anxiety was managed, his sleep varied and that he was keeping occupied

during the pandemic lockdown by coloring.[113]  Plaintiff's mental status

examination was unchanged.[114] On August 21, 2020, Plaintiff presented to ARNP

French for medication management and reported that he recently stopped taking

Suboxone, that he still had intermittent depression, that he was managing his

anxiety, and that his sleep was good.[115] On examination, Plaintiff had normal

speech and mood, paranoid thoughts, normal attention and concentration, auditory

hallucinations, was oriented, had fair insight and judgment, and had normal

---

[110] AR 567-68.

[111] AR 950.

[112] AR 953-54.

[113] AR 692-93.

[114] AR 965-66.

[115] AR 972-73.

memory.[116] On September 3, 2020, ARNP French referred Plaintiff to Kenneth Bracconier for therapy.[117] At an October 21, 2020, visit with ARNP French Plaintiff's mental status examination was unchanged.[118]

On January 21, 2021, Plaintiff presented to ARNP French and reported stable depression and bipolar but social anxiety, and requested therapy.[119] On examination, Plaintiff had normal speech and mood, normal attention and concentration, auditory hallucinations, was oriented, had fair judgment and insight, and normal memory.[120] On April 21, 2021, Plaintiff presented to ARNP French and Therapist Trainee Spencer Ash.[121] On examination Plaintiff had normal speech, mood, and thought content; was oriented; had no psychosis; and had fair judgment and insight.[122] At a visit on June 21, 2021, Plaintiff's examination was unchanged.[123] On August 20, 2021, Plaintiff remained in

---

[116] AR 975-77.

[117] AR 982.

[118] AR 986-87.

[119] AR 994-95.

[120] AR 996-98.

[121] AR 1005.

[122] AR 1009-11.

[123] AR 1026-27.

remission on his medication.[124]  On examination, his mental status was unchanged from the prior examination in April 2021.[125]

### d.    _Yakima Neighborhood Health Services_

Lab results from monthly drug testing between November 27, 2019, through September 9, 2021, indicate that Plaintiff was negative for all drugs except his addiction medication, buprenorphine.[126]  As of September 9, 2021, Plaintiff was stable on a regimen of Suboxone, benzotropine, haloperidol, mirtazapine, and propranolol.[127]

### 4.    Analysis

The Court notes that the ALJ's decision is unusually brief, with only an nine-page decision, containing only five pages of analysis.  It does not address Dr. Donahue's statement that the record is insufficient to form an opinion but addresses the opinions of Dr. Genthe and Dr. Lewis.

### a.    _Dr. Genthe's opinions_

Dr. Genthe opined that Plaintiff had a severe limitation which would prevent completion of tasks outside of a sheltered workshop in the following work tasks: communicate and perform effectively, maintain appropriate behavior, and

---

[124] AR 1036.

[125] AR 1040.

[126] AR 772-81.

[127] AR 788.

complete a normal workday without interruption.[128] Dr. Genthe opined that Plaintiff would have a marked limitation in the ability to perform the following work tasks: understand, remember, and persist in the following detailed instructions; adapting to changes in a work-setting; being aware of hazards; asking simple questions or requesting assistance; and setting goals independently.[129] Dr. Genthe opined that Plaintiff would have a moderate limitation in performing the following tasks: perform activities within a schedule, maintain attendance, be punctual, and learn new tasks.[130] Dr. Genthe opined that the combined effect of the limitations was severe.[131]  Dr. Genthe stated that the limitations were not primarily the result of substance use disorder and stated that an assessment should be made.[132] Dr. Genthe explained in a narrative paragraph that Plaintiff's personality disorder likely interfered in his ability to deal with others and to engage in treatment.[133]  Dr. Genthe opined that Plaintiff's medication managed his depression and psychosis moderately well but did not manage his paranoia, ADHD

---

[128] AR 358.

[129] *Id.*

[130] *Id.*

[131] *Id.*

[132] AR 359.

[133] *Id.*

1   and anxiety and that those limitations interfered with his ability to maintain

2   employment.[134]

3           The ALJ found Dr. Smiley's opinion not persuasive. The ALJ provided the

4   following reasoning:

5           The claimant underwent a psychiatric evaluation in April 2019 where
        it was noted that he had a history of auditory and visual hallucinations
6           related to trauma that included being sexually molested and witnessing
        someone get hit by a train. Heavy drug abuse was also documented. He
7           was nervous and pacing. His thoughts were tangential, but he was
        oriented to reality. The clinical picture was of someone with an
8           antisocial personality and substance abuse problems, who was socially
        isolated with peculiar thinking patterns and a distrust of people.
9           Thomas Genthe, Ph.D. opined that the claimant was unlikely to
        function adequately, and/or consistent in a work setting until his
10          psychological symptoms have been managed more effectively (Exhibit
        2F, pp.3-8). The opinions of Dr. Genthe are not persuasive because the
11          evidence has not established that the claimant was unable to function
        adequately in all work settings. His condition was complicated by drug
12          use and unremarkable when sober.[135]

13  The ALJ went on to state:

14          Pursuant to progress notes through October 2019, the claimant was
        homeless and living out of his car (Exhibit 3F, p.49). He had used
15          heroin and methamphetamines since he was thirteen years old, and
        was in and out of residential treatment programs since he was
16          seventeen (Exhibits 3F, p.66 & 6F). He was diagnosed with
        schizophrenia, post-traumatic stress disorder (PTSD), and bipolar
17          disorder. He alleged that he had never held a job for more than four
        months (Exhibit 3F, p.49). By April 2019, the claimant denied
18          depression, irritability, and paranoid thoughts. However, he continued
        to experience anxiety and poor concentration (Exhibit 4F, p.2).

19
20          On examination, the claimant was fidgety and restless with an anxious
        mood. There were feelings of helplessness/hopelessness, and his

21  _____

    [134] *Id.*
22
    [135] AR 20.
23

attention span/concentration was poor.  He averred that he heard voices and had paranoid thoughts when he was not on medication (Exhibit 4F, pp.4 & 96-99).  He was continuing to use meth (Exhibit 7F, p.136).

In November 2019, he was started on maintenance agonist therapy for his opioid addiction (Exhibit 7F, p.147).  He was doing well in January 2020 (Exhibit 7F, p.89).  On May 15, 2020, the claimant reported a well-being score of 75 out of 100 (Exhibit 10F, p.14).  By July 2020, the claimant was stable on his medication, Suboxone, and was doing well with no relapses (Exhibit 7F, p.21).

By April 2021, the claimant reported no symptoms of anxiety, depression, hallucinations, insomnia, or overt psychosis.[136]

On its face, the ALJ's analysis is deficient.  First, the ALJ fails entirely to discuss supportability.  The regulations are clear that the ALJ is required to articulate findings both as to supportability of the opinion with the source's own treatment notes and consistency with the record as a whole.  While arguably the ALJ's language could serve as an articulation of findings regarding consistency there is no discussion as to supportability.  This is consequential in this case because Dr. Genthe conducted a very thorough examination which included administering a Personality Assessment Inventory, generally regarded as objective evidence.[137]  The ALJ mentioned but glossed over the results of the test, which indicated antisocial traits and difficulty with interaction with others.  The results of the assessment were consistent with Dr. Genthe's opinions and he obviously relied on the test in rendering his opinions, but the ALJ failed to even mention that

---

[136] AR 20-21.

[137] AR 361-62.

the test was administered.  The ALJ failed to consider the other abnormalities noted by Dr. Genthe, such as the fact that Plaintiff was tangential and that he paced around the room for much of his appointment according to Dr. Genthe.[138] Thus, the ALJ's failure to articulate any findings as to the supportability factor was consequential.

Additionally, the ALJ's analysis of Dr. Genthe's opinions was flawed.  While the ALJ did note that he found Dr. Genthe's opinions inconsistent with a limited number of treatment records, he failed to consider the bulk of the record and often took the findings of the limited notes referenced out of context.

The ALJ noted that by April of 2019 Plaintiff denied that he suffered depression, irritability, or paranoid thoughts.[139] But the ALJ viewed the record out of context.  Plaintiff had been prescribed Haldol, a powerful antipsychotic medication in March 2019, and in April 2019 he was reporting improvement as would be expected.[140] But on examination, Plaintiff had blunted and anxious affect, distractibility, and both auditory and visual hallucinations.[141]  On April 12, 2019, Plaintiff's counselor noted that he would require weekly treatment until he was

---

[138] AR 360.

[139] AR 20.

[140] AR 429.

[141] AR 431-32.

stable due to his "significant issue with mental health."[142]  Thus, Plaintiff's

condition was improved in April 2019, but not inconsistent with Dr. Genthe's

findings.  Moreover, the records from treatment consistently indicated that

Plaintiff had paranoid thought content and poor concentration throughout 2019,

2020, and into 2021, but that he did show significant improvement in April 2021.[143]

The ALJ's assertion that Plaintiff's symptoms were the result of drug use is

contradicted by the record.  Dr. Genthe opined that drug use was not the primary

cause of Plaintiff's symptoms and the ALJ failed to address that opinion when

addressing Dr. Genthe's opinions in general.  Dr. Genthe's opinion is

uncontroverted.  Moreover, with the exception of two brief relapses, monthly lab

results from Yakima Neighborhood Services indicate that Plaintiff tested negative

for all substances with the exception of his prescribed medication, Suboxone.[144]

Thus, taken as a whole, the record indicates that in the absence of drug use

Plaintiff continued to suffer from limitations in his ability to concentrate and from

paranoia.

---

[142] AR 450.

[143] AR 512, 522, 567, 953, 975, 1005.

[144] AR 772-781.

1      While an ALJ may discount an opinion that is inadequately supported by

2  medical findings and observations,[145] or discredit an opinion "based on

3  contradictions between the opinion and the physician's own notes,"[146] the Court

4  finds that the ALJ improperly ignored objective medical evidence as well as

5  detailed narrative provided by Dr. Genthe in his consideration of Dr. Genthe's

6

_____

7  [145] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)

8  (recognizing that a medical opinion may be rejected if it is conclusory or

9  inadequately supported); *Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical

10  opinion is evaluated as to the amount of relevant evidence that supports the

11  opinion, the quality of the explanation provided in the opinion, and the consistency

12  of the medical opinion with the record as a whole); *Crane v. Shalala,* 76 F.3d 251,

13  253 (9th Cir. 1996).

14  [146] *Buck*, 869 F.3d at 1050; *see also* 20 C.F.R. § 416.920c ("The more relevant the

15  objective medical evidence and supporting explanations presented by a medical

16  source are to support his or her medical opinion(s) or prior administrative medical

17  finding(s), the more persuasive the medical opinions or prior administrative

18  medical finding(s) will be."); *Baker v. Saul*, 836 F. App'x 526, 528 (9th Cir. 2020)

19  (unpublished) (noting that the psychologist had only met with the claimant once

20  and "[t]he ALJ compared [the psychologist]'s conclusions to the doctor's own notes,

21  which indicated that Baker performed within the normal limits for six of the eight

22  "additional detail" categories on the mental status exam.").

23

opinion. The Court concludes that remand is warranted for the ALJ to properly

consider the record and to articulate his evaluation of the supportability of

Dr. Genthe's opinions with his own examination findings and the consistency of his

opinions with the other medical records.

> b. <u>Dr. Lewis</u>

State agency evaluator Jan Lewis, PhD, opined that Plaintiff had the ability

to carry out simple, routine instructions; maintain concentration, persistence, and

pace for up to two hours continuously; maintain adequate attendance; complete a

normal workday/workweek within normal tolerances of a competitive workplace;

and interact with others on an occasional/superficial basis.[147]  Plaintiff argues that

the ALJ did not give good reasons for finding the opinions of Dr. Lewis to be

persuasive.  The Court agrees.

The ALJ articulated the following:

> The opinion of Dr. Lewis is persuasive based upon his expertise,
> impartiality, and the consistency of his findings with the evidence as a
> whole.  The claimant has done well with sustained sobriety and the
> evidence does not establish a greater degree of limitation related to
> substance abuse for a twelve-month period since the alleged onset
> date.[148]

The Court agrees with Plaintiff that it is unclear what expertise the ALJ refers to

when addressing Dr. Lewis' qualification, give the fact that Dr. Lewis and

---

[147] AR 100-101.

[148] AR 21.

Dr. Genthe hold the same degree.  Also, it is notable that Dr. Genthe examined Plaintiff and rendered an opinion at the request of the state Department of Social and Human Services and was, like Dr. Lewis, an impartial examiner. Additionally, the Court reiterates its finding with regard to the ALJ's assertion that Plaintiff's symptoms were the result of drug abuse during the time period from November 2019 through September 2021.

To the extent that the Court has remanded the case for consideration of Dr. Genthe's opinion, the ALJ will be required to reconsider the medical opinions in general.

5.    <u>Summary</u>

Because the ALJ did not give good reasons for his evaluation of the medical opinions in the record, a remand is warranted.  On remand, the ALJ is directed to properly consider the medical evidence and to articulate his findings as to the supportability and consistency of the medical opinions of Dr. Genthe and Dr. Lewis.

**B.    Plaintiff's Subjective Complaints: The Court finds the issue moot.**

Plaintiff argues the ALJ failed to properly assess his subjective complaints. As discussed above, the ALJ failed to consider the medical record as a whole. Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to consider the credibility of Plaintiff's subjective complaints.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**C.      Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[149] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[150]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC.  While the records indicate a significant improvement in Plaintiff's condition on and after April 21, 2021, the ALJ's RFC is not supported particularly with regard to the period prior to that date.  The ALJ is directed to properly consider the medical opinions and Plaintiff's subjective complaints and make findings at each of the five steps of the sequential evaluation process.

## IV.      Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

---

[149] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[150] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 10 and 16**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 28th day of November, 2023.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge